# Supreme Court of Florida

_____

No. SC12-937
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**DANIEL GARY GASS,**
Respondent.

[December 18, 2014]

PER CURIAM.

We have for review a referee's report recommending that respondent Daniel Gary Gass be found guilty of professional misconduct in violation of the Rules Regulating the Florida Bar (Bar Rules) and suspended from the practice of law for sixty days. We have jurisdiction. See art. V, § 15, Fla. Const. As discussed below, we approve the referee's findings of fact. We also approve the referee's recommendation that Gass be found guilty of violating Bar Rules 4-1.3 (Diligence), 4-1.4(a)(3), and 4-1.4(a)(4) (Communication; Informing Client of Status of Representation), and 4-8.4(d) (Misconduct); however, we disapprove the referee's recommendation that Gass be found in violation of Bar Rule 4-1.4(a)(5)

(Communication; Informing Client of Status of Representation). We also disapprove the referee's recommended sanction, a sixty-day suspension. Given Gass's failure to diligently act on behalf of his clients and to keep them informed as to the status of their case, and considering the harm his actions caused to the clients, we conclude that a one-year suspension is appropriate.

**FACTS**

In May 2012, The Florida Bar filed a complaint against Gass, alleging that he engaged in misconduct in violation of the Bar Rules. A referee was appointed to consider the matter. Following a hearing, the referee submitted her report for the Court's review, in which she made the following findings and recommendations.

In April 2010, Gass was hired by two clients, a married couple, to handle several legal issues pending against them, as well as against their family-owned business. The most significant of these was a civil case pending in the circuit court that was related to an outstanding debt that the clients and their company owed to a third party, who was the plaintiff in the civil case. By the time Gass first met with the clients in April, a default judgment had been entered against them, and the plaintiff was attempting to collect the judgment.

The evidence presented to the referee indicated that the clients received a subpoena for a deposition scheduled for May 25, 2010; the subpoena also directed

the clients to produce certain documents at the deposition. The clients informed Gass of the subpoena and provided him with a copy. However, they testified that Gass advised them not to attend. Based on this advice, the clients did not appear for the deposition. Subsequently, counsel for the plaintiff filed a petition for an order to show cause. On June 21, 2010, the circuit court entered an order to show cause, holding the clients in contempt. The order allowed the clients to purge the contempt by appearing at a rescheduled deposition on June 22. The clients attended this deposition, but Gass did not.

Gass formally entered a notice of appearance in the civil case in July 2010. However, the referee stated: "I find that it is clear that Respondent was representing the [clients] prior to the Notice of Appearance and that Respondent should have been present at the [clients'] deposition. Respondent's failure to attend is a clear indication of a lack of diligence in representing the [clients]." Notably, once Gass filed the notice of appearance, the clients no longer received any correspondence directly from the plaintiff, and they relied on Gass to keep them informed.

At their deposition on June 22, it appears that the clients produced some, but not all, of the documents requested from them. Consequently, in July 2010, counsel for the plaintiff filed a second petition for an order to show cause. The referee found that Gass received this petition, but he did not inform the clients. On

August 23, 2010, the circuit court entered a second order to show cause, ordering the clients to produce the remaining documents. The order set a show cause hearing for October 4, 2010, and directed the clients to produce the documents at least five days before the hearing. The referee found that Gass received this order, but he again failed to notify the clients or inform them of the show cause hearing. Thus, the clients did not attend the hearing, and Gass did not attend the hearing on the clients' behalf. During the proceedings before the referee, Gass maintained that the clients were aware of the show cause hearing and that they directed him not to attend. The referee expressly found that this testimony was not credible.

On January 10, 2011, the circuit court entered a "Renewed Order Regarding Hearing on Order to Show Cause on October 4, 2010" (Renewed Show Cause Order). On February 8, 2011, the court entered an "Amended Renewed Order Nunc Pro Tunc as of January 10, 2011, Regarding Hearing on Order to Show Cause on October 4, 2010" (Amended Renewed Show Cause Order). The clients were personally served with the orders. The Amended Renewed Show Cause Order gave the clients ten days from the date of service to provide all of the documents requested. The order warned that they would be incarcerated if they did not produce the documents.

When the clients received the Renewed Show Cause Order, they sent a letter to Gass's secretary. In the letter, the clients stated that they believed they had

provided all of the documents they had available, and they asked Gass to advise them how to proceed. Gass did not respond to the letter; however, the clients testified that they did speak with his secretary, and she indicated Gass was addressing the issue.

In his testimony before the referee, Gass maintained that he repeatedly warned the clients that if they did not provide the documents requested by the plaintiff, they could be incarcerated for contempt. However, the referee found Gass's testimony was "completely lacking in credibility," and he did not produce any records of correspondence, telephone conversations, or meetings where he provided this advice. Gass also maintained that the clients received copies of the circuit court's Renewed Show Cause Order and Amended Renewed Show Cause Order, and they should have been aware of the potential for their arrests. The referee found that Gass's expectation that his clients interpret a legal document on their own indicated "a callous indifference to his clients and is contrary to his ethical obligations as an attorney."

In February 2011, the circuit court issued capias and bench warrants for the clients. Although Gass gave conflicting testimony as to whether he received copies of the warrants in advance and whether he warned the clients of their impending arrest, the referee found no credible evidence that Gass attempted to communicate with the clients at this crucial time. On February 22, 2011, the

clients were arrested and taken to jail. After their arrests, Gass did take action to secure their release. He filed a personal bankruptcy action on their behalf (staying the civil case), as well as an emergency motion to strike the capias and bench warrants. The motion was granted, and the clients were eventually released. One client spent three days and two nights in custody, and the other client spent three days and three nights in custody. Both clients testified that their incarceration was very traumatic and caused significant emotional anguish.

Based on these facts, the referee recommended that Gass be found guilty of violating Bar Rules 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4(a)(3) (a lawyer shall keep the client reasonably informed about the status of the matter); 4-1.4(a)(4) (a lawyer shall promptly comply with reasonable requests for information); 4-1.4(a)(5) (a lawyer shall consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows or reasonably should know the client expects assistance not permitted by the Rules of Professional Conduct); and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).

The referee found two aggravating factors in this case: Gass had a prior disciplinary history, having received a public reprimand in 2011 for violations of the trust account rules; and Gass had substantial experience in the practice of law.

Additionally, the referee found five mitigating factors: Gass lacked a selfish or dishonest motive for his actions; he made timely, good faith efforts to rectify the consequences of his misconduct; Gass cooperated fully and made free disclosure to the disciplinary board or exhibited a cooperative attitude during the disciplinary proceedings; Gass was of good character or reputation; and Gass exhibited remorse for his misconduct.

As to the sanction, the referee recommended that Gass be suspended from the practice of law for sixty days. The referee also awarded costs to the Bar in the amount of $5,719.24.

The Bar filed a notice of intent to seek review of the report of the referee, urging the Court to disapprove the referee's recommended sanction and instead impose a one-year suspension. Gass filed a cross-notice, challenging the referee's recommendations as to guilt as well as the recommended sanction.

## ANALYSIS

We first address the referee's recommendation that Gass be found guilty of violating Bar Rules 4-1.3, 4-1.4, and 4-8.4(d). To the extent that Gass challenges the referee's findings of fact, the Court's review of such matters is limited, and if a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will neither reweigh the evidence nor substitute its judgment for that of the referee. Fla. Bar v. Frederick, 756 So. 2d 79, 86 (Fla. 2000); see also

Fla. Bar v. Jordan, 705 So. 2d 1387, 1390 (Fla. 1998). To the extent that Gass challenges the referee's recommendations as to guilt, the Court has stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendation. See Fla. Bar v. Shoureas, 913 So. 2d 554, 557-58 (Fla. 2005).

The referee first recommended that Gass be found guilty of violating Bar Rule 4-1.3. We conclude that the referee's recommendation as to this rule violation is well supported. Rule 4-1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client. Here, the referee found that Gass advised his clients not to attend a deposition scheduled in their civil case, he repeatedly failed to inform them of the circuit court's orders to show cause and the show cause hearing, and he did not attend depositions and hearings on his clients' behalf. As a result of his inaction, the depositions and hearings had to be rescheduled, and the civil case against the clients was delayed for months.

We also find that Gass did not act diligently on behalf of the clients when the circuit court issued capias and bench warrants for their arrests. Although there was conflicting testimony as to when Gass received the warrants, the referee ultimately found that he took no action on behalf of the clients during this crucial time.

In his arguments before this Court, Gass contends that he was in regular communication with the clients, that the clients were aware of the circuit court's orders and hearings, and that he repeatedly informed the clients that if they did not comply with the plaintiff's requests for documents, they could be found in contempt and arrested. However, the referee found that Gass's testimony was not credible. This Court has long held, "[t]he referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." Fla. Bar v. Tobkin, 944 So. 2d 219, 224 (Fla. 2006) (citing Fla. Bar v. Thomas, 582 So. 2d 1177, 1178 (Fla. 1991)). Here, we conclude that there is no basis for rejecting the referee's determination. Accordingly, we approve the referee's recommendation that Gass be found guilty of violating Bar Rule 4-1.3.

We also approve the referee's recommendation that Gass be found in violation of Bar Rules 4-1.4(a)(3) and (a)(4). Those rules require the lawyer to keep the client reasonably informed about the status of a matter and to promptly comply with the client's reasonable requests for information. Here, the referee found that Gass repeatedly failed to inform the clients of orders and hearings in their case. As noted, there is also no evidence that Gass warned the clients that their failure to comply with the court's orders could result in their being held in contempt. In January 2011, when the clients received the Renewed Show Cause

Order, they sent Gass a letter stating that they believed they had provided all of the documents in their possession and asking Gass to advise them how to proceed. Gass did not personally respond to the letter, and there is no indication that he took any action on the clients' behalf at that time. While Gass maintains that the clients should have known they were at risk to be incarcerated based on language in the Renewed Show Cause Order and Amended Renewed Show Cause Order, we agree with the referee that Gass's expectation that his clients interpret a legal document on their own without his guidance indicates a callous indifference to the clients. Accordingly, we approve the referee's recommendation that Gass be found guilty of violating rules 4-1.4(a)(3) and (a)(4).

Gass next urges the Court to disapprove the referee's recommendation of guilt as to Bar Rule 4-1.4(a)(5). The rule provides that a lawyer shall consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows or reasonably should know that the client expects assistance not permitted by the Rules of Professional Conduct. We agree that the referee's factual findings do not support the conclusion that Gass failed to consult with the clients about ethical limitations on his conduct, and we disapprove the referee's recommendation of guilt as to this rule.

Lastly, we approve the referee's recommendation that Gass be found guilty of violating Bar Rule 4-8.4(d), which provides that a lawyer shall not engage in

conduct in connection with the practice of law that is prejudicial to the administration of justice. We conclude that Gass's failure to act diligently on behalf of the clients and his failure to keep the clients informed, causing significant delays in the case and ultimately resulting in the clients' arrests and incarceration, were prejudicial to the administration of justice.

We next address the referee's recommended sanction, a sixty-day suspension. In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989); see also art. V, §15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing caselaw and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).

We agree with the referee that Gass's misconduct warrants a suspension. See Fla. Stds. Imposing Law. Sancs. 4.42 (stating that suspension is appropriate when "a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client" or "engages in a pattern of neglect and causes injury or potential injury to a client"). However, we believe that his failures to act on behalf of the clients, and particularly the serious harm his inaction caused to the

- 11 -

clients, warrant a more severe suspension than sixty days. The Bar argues that a one-year rehabilitative suspension is appropriate; we agree.

We have previously imposed rehabilitative suspensions in cases where an attorney failed to act on behalf of clients or failed to keep a client informed in a case and caused the client harm. In <u>Florida Bar v. Roberts</u>, 770 So. 2d 1207 (Fla. 2000), we suspended an attorney for ninety-one days for failing to consult with a client before transferring her case to a new attorney, refusing to respond to the client's repeated calls, and informing the client that he could no longer represent her less than a month before a scheduled mediation. We stated: "We here make the specific point that an attorney's consideration of his or her client's interests and communication with the client at reasonable times in response to the client's inquiries <u>are a vital and necessary part of the attorney-client relationship</u>." <u>Id.</u> at 1209 (emphasis added); <u>see also</u> <u>Fla. Bar v. Summers</u>, 728 So. 2d 739 (Fla. 1999) (suspending former Assistant United States Attorney for ninety-one days for failing to comply with numerous trial court directives in forfeiture case where respondent represented government, resulting in entry of final judgment against government, and for failing to respond to Bar inquires and to attend final hearing before referee); <u>Fla. Bar v. Rolle</u>, 661 So. 2d 301 (Fla. 1995) (suspending attorney for ninety-one days for failing to respond to repeated requests for information by clients in two separate cases and for failing to take any action in one of client's

cases); <u>Fla. Bar v. Witt</u>, 626 So. 2d 1358 (Fla. 1993) (suspending attorney for ninety-one days for neglecting client's workers' compensation and personal injury cases and for neglecting five separate appeals in First District Court of Appeal, resulting in dismissal of two appeals).

Moreover, Gass's misconduct is particularly egregious because it ultimately resulted in his clients each spending three days in jail for contempt. In <u>Florida Bar v. Morrison</u>, 669 So. 2d 1040 (Fla. 1996), we noted that "[t]he failure of an attorney to pursue representation on behalf of a client resulting in prejudice to a client's rights is an intolerable breach of trust." <u>Id.</u> at 1042. In <u>Morrison</u>, the attorney was hired to represent a client in an already pending lawsuit, but he failed to timely file a notice of appearance in the case or respond to motions, resulting in the case being dismissed without prejudice. Although the attorney refiled the complaint, he failed to actively pursue the case, again resulting in dismissal. By the time of the second dismissal, the statute of limitations had run, precluding the client from pursuing her claims. The Court suspended the attorney for one year. In the case presented here, we note that the clients suffered an even more serious harm than the client in <u>Morrison</u>, in that they were arrested and forced to spend three days in jail. The clients testified before the referee that their time in jail was very traumatic and has caused lasting emotional anguish. Accordingly, we conclude that a one-year suspension is appropriate.

We have also considered the referee's findings in aggravation and mitigation. The referee found two aggravating factors: (1) Gass had a prior disciplinary history, and (2) Gass had substantial experience in the practice of law. The referee also found five mitigating factors: (1) Gass lacked a selfish or dishonest motive for his actions; (2) Gass made timely good faith efforts to rectify the consequences of his misconduct, in that he moved quickly to have the clients released from jail after their arrest; (3) Gass cooperated fully during the disciplinary proceedings; (4) Gass was of good character or reputation; and (5) Gass exhibited remorse for his misconduct. However, we conclude that these mitigating factors do not outweigh Gass's serious misconduct.

## CONCLUSION

Accordingly, Daniel Gary Gass is hereby suspended from the practice of law for one year. The suspension will be effective thirty days from the filing of this opinion so that Gass can close out his practice and protect the interests of existing clients. If Gass notifies this Court in writing that he is no longer practicing law and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Gass shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further, Gass shall accept no new business from the date this opinion is filed until he is reinstated.

- 14 -

Judgment is entered for The Florida Bar, 651 East Jefferson Street,

Tallahassee, Florida 32399-2300, for recovery of costs from Daniel Gary Gass in

the amount of $5,719.24, for which sum let execution issue.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, Florida, and Adria E. Quintela, Staff Counsel, and Ghenete Elaine Wright Muir, Bar Counsel, The Florida Bar, Sunrise, Florida,

for Complainant

Kevin P. Tynan of Richardson & Tynan, P.L.C., Tamarac, Florida,

for Respondent